**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Buckley, a married woman in her sole and separate capacity; and Anthony Pellegrino, a married man in his sole and separate capacity,<br><br>  Plaintiffs,<br><br>vs.<br><br>Don Bushell, husband; and Pam Bushell, wife,<br><br>  Defendants. | No. CV 25-00012-TUC-MAA<br><br>**ORDER** |

Pending before the court is a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to FED.R.CIV.P.12(b)(2), filed by the defendants on January 20, 2025. Doc. 9. The plaintiffs filed a response and an affidavit in support on January 28, 2025. Docs. 15, 16. The defendants filed a reply on February 12, 2025, to which they attached two affidavits in support. Doc. 17.

The Magistrate Judge presides over this action having received the consent of all parties pursuant to 28 U.S.C. § 636(c). Doc. 14.

This action is part of a long-standing dispute between three of Dorothy Pellegrino's children over her care and guardianship. The plaintiffs are Arizona residents. Complaint, Doc. 1-2, p. 3. In their Complaint, they allege that the defendants, who are residents of Washington, have engaged in Abuse of Process and Wrongful Institution of Civil Proceedings by filing

certain court proceedings in Arizona and Washington. Doc. 1-2. In their pending motion, the defendants argue that this court lacks personal jurisdiction. Doc. 9.

A telephonic hearing on the motion was held on April 29, 2025. Doc. 21. At the hearing, the plaintiffs argued, among other things, that the court should not consider the affidavits that the defendants attached to their reply brief.

Assuming without deciding that the defendants' affidavits may be considered, the court finds that the motion should be denied. The defendants committed certain intentional acts expressly aimed at the forum state, Arizona. *See, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006) (Lawsuit filed by the defendants in French court seeking orders directing the plaintiff to perform significant acts in California was an intentional act expressly aimed at the forum state.).

FACTUAL AND PROCEDURAL BACKGROUND

The family matriarch, Dorothy Pellegrino ("Dot"), is 95 years old. Complaint, Doc. 1-2, p. 4. She has four children, three of whom appear in the pending litigation: Valerie Buckley ("Valerie"), Tony Pellegrino ("Tony"), and Pam Bushell ("Pam"). *Id*. Valerie and Tony are the plaintiffs; Pam and her husband, Don Bushell ("Don"), are the defendants.

Dot currently lives at the "Beehive Homes of Eagar Assisted Living, an assisted living facility located in Eagar, Arizona." Doc. 1-2, p. 5; Affidavit of Valerie, Doc. 16, p. 1. The plaintiffs, Valerie and Tony, are residents of Graham County, Arizona, and Apache County, Arizona, respectively. Doc. 1-2, p. 3; Doc. 16, p. 1. The defendants, Pam and her husband, Don, are residents of King County, Washington, Doc. 1-2, p. 3.

"Prior to 2020, Pam had a fiduciary relationship with Dot." Doc. 1-2, p. 4. But in 2020, "Dot identified Valerie as her health care agent and her attorney-in-fact pursuant to a General Durable Power of Attorney and identified Tony as her co-Trustee with respect to the trust which holds title to her assets." Doc. 1-2, p. 4. Don estimated in 2020 that Dot had $700,000 in assets. Doc. 1-2, p. 14.

In 2020 or early 2021, Pam filed "a guardianship action in Pima County [Superior Court] . . . seeking to have herself appointed as Dot's Guardian." Doc. 1-2, p. 5; Doc. 9, p. 4; Doc. 16-1, p. 3. The defendants assert in their motion that Pam filed this action because the plaintiffs moved Dot to Willcox, Arizona, and then to Eagar, Arizona, in an attempt to keep Pam from visiting or communicating with her. Doc. 9, p. 4.

In 2021, Pam withdrew her action apparently in exchange for a writing dated January 27, 2021, in which Valerie and Tony "expressed no objections to Pam visiting Dot if Dot wanted to visit with her." Doc. 1-2, p. 5; Doc. 9, p. 4. Pam asked her husband, Don, to obtain an Arizona law license "in case she needed help gaining access to her mother in Arizona." Doc. 9, pp. 4-5. Previously, he was licensed to practice in California and Washington. *Id*.

On March 23, 2022, Pam and Don traveled to the Beehive care home to visit with Dot. Doc. 9, p. 5; Doc. 1-2, p. 5. They allege that the Beehive care home staff told Pam she was not welcome and told Don he must leave. Doc. 9, p. 5. Pam and Don maintain that this visit was "ruined" by the plaintiffs, who failed to honor the previous "no objections" agreement. Doc. 9, p. 5; Doc. 1-2, p. 5.

Don suggested to Pam that they pursue "ex-parte relief." Doc. 9, p. 6. Consequently, the defendants initiated a number of actions "directed toward restoring private access to Dorothy," one in Arizona and at least two in Washington. Doc. 9, p. 6; Doc. 15, p. 3.

On July 12, 2024, Pam, represented by Don, filed a Petition for Appointment of Guardianship and Conservatorship of an Adult in Apache County, Arizona. Doc. 1-2, p. 6; Doc. 9, p. 6; Doc. 16-1, p. 3 (Case Number GC-2024-019). She named as respondents Tony, Valerie, the Beehive homes, and the Beehive's director, Eric Hamblin. Doc. 16-1, p. 3. On August 21, 2024, the court issued an order stating that "[b]ased on the Investigator's Report . . . the Court finds insufficient information to justify temporary guardianship, conservatorship and/or a temporary restraining order." Doc. 16-1, p. 39.

As some point, Valerie filed her own action in Apache County, Arizona. Doc. 1-2, pp. 6-7. The plaintiffs allege that Pam filed a motion to consolidate the two actions. Doc. 1-2, p. 7. The current status of the two Apache County actions is unclear.

In July or August of 2024, Pam, represented by Don, filed an action in King County, Washington, against Valerie, Tony, the Beehive Homes and its director, Eric Hamblin. Doc. 1-2, p. 8; Amended Complaint, Doc. 16-2, p. 2 (Case Number 24-2-18904-1 KNT). Pam sought access to Dot and the Beehive and an order precluding the plaintiffs from contacting law enforcement concerning her or Don's presence at the Beehive property. Doc. 1-2, p. 9; Doc. 15, p. 3.

In their response brief, the plaintiffs assert that Pam and Don filed two additional actions in Washington. Doc. 15, p. 3. They maintain that Pam and Don obtained *ex parte* orders that, for a time, restricted their activities in Arizona. *Id*.

On December 16, 2024, Valerie and Tony filed the pending Complaint in Graham County Superior Court. Doc. 1, p. 1. They claim that the defendants have engaged in Abuse of Process and Wrongful Institution of Civil Proceedings. Doc. 1-2. The action was removed to this court by the defendants alleging diversity jurisdiction on January 13, 2025. Doc. 1, pp. 1-2.

In Count 1, the plaintiffs allege that "[i]n both Arizona and Washington, Don and Pam have engaged in willful acts associated with judicial process." Doc. 1-2, pp. 10-11. They claim "Don and Pam have committed the tort of abuse of process" by acting "for ulterior purposes not proper in the regular conduct of the proceedings." *Id*.; *see also Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1060 (D. Ariz. 2012) (discussing the elements of an abuse of process claim), *aff'd sub nom*. *Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013).

In Count 2, the plaintiffs allege that Don and Pam "committed the tort of wrongful institution of civil proceedings" when they instituted the first action in Washington state without probable cause and motivated by malice. Doc. 1-2, p. 11; *see also Donahoe*, 869 F. Supp. 2d at 1057 (discussing the elements of a claim for wrongful institution of civil proceedings).

In the Damages section of the Complaint, the plaintiffs allege that they "have expended more than $20,000 to pay lawyers to date." Doc. 1-2, p. 10. They further allege that they "worry constantly" that they will be harmed by the defendants' continuing activities. *Id*. "Most importantly," they allege, "the actions have interfered with Valerie and Tony's ability to function routinely, leaving them worried about whether Dot knows about the battles, and whether they are still providing for her." *Id*.

On January 20, 2025, the defendants filed the pending motion to dismiss for lack of personal jurisdiction pursuant to FED.R.CIV.P.12(b)(2). Doc. 9.

Discussion

The court may dismiss an action pursuant to Rule 12(b)(2), Fed. R. Civ. P., if the court lacks personal jurisdiction over the defendants. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id*. (punctuation modified). "All uncontroverted allegations in the complaint are deemed true, and factual disputes are to be resolved in favor of the non-moving party." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-1155 (9th Cir. 2006). Because the Arizona long-arm statute extends jurisdiction to the maximum extent permitted by due process, only the due process analysis is necessary. *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 416 (9th Cir. 1997).

"Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair

play and substantial justice." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (punctuation modified). The defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980).

The court may exercise either general or specific jurisdiction over a defendant. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). If the defendant maintains "substantial" or "continuous and systematic" ties to the forum, the court may assert general jurisdiction over the defendant. *Id.* Where the defendant's ties to the forum are not continuous and systematic, jurisdiction nevertheless may be proper if the defendant's ties to the forum are sufficient, and the suit arises out of these ties. *Id.* This is called specific jurisdiction. *Id.*

The plaintiffs do not allege that the defendants are subject to general jurisdiction. Doc. 15, p. 2. Accordingly, the court concentrates its inquiry on the test for specific jurisdiction.

The "minimum contacts" test for specific jurisdiction is satisfied when "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). "The plaintiff bears the burden of satisfying the first two prongs of the 'minimum contacts' test." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The first prong of the test is satisfied if the defendant "has either (a) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (b) 'purposefully directed' his activities toward the forum." *Pebble Beach Co.*, 453 F.3d at 1155. The plaintiffs here argue that the defendants purposefully directed their activities toward the forum. Doc. 15, p. 3.

The "purposefully directed" test is satisfied where the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Pebble Beach Co.,* 453 F.3d at 1156; *but see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."). In this case, the plaintiffs argue that the defendants filed two court actions purposefully directed toward the plaintiffs in Arizona.

The Apache County Superior Court Action

On July 12, 2024, the defendants, Pam and Don, filed a petition in the Apache County Superior Court seeking a temporary conservatorship and guardianship over Dot, "for the purpose of expediting PRIVATE visitation with Petitioner's mother [in Eagar, Arizona] as well as expediting Dorothy's relocation to Tucson." Doc. 16-1, pp. 3-4. They named Arizona residents Tony and Valerie, among others, as respondents. Doc. 16-1, p. 3. Pam and Don alleged in the petition that Valerie and Tony were exerting "undue influence" over Dot to "coerce" her "to state that she does not want to visit with [Pam]." Doc. 16-1, pp. 4-5. They further alleged that Valerie and Tony improperly moved Dot to the Beehive facility in Apache county, Arizona and improperly limited Pat's access to Dot. Doc. 16-1, p. 5.

On July 25, 2024, in connection with this petition, Pam filed an ex parte motion for temporary guardianship and conservatorship and a temporary restraining order. Doc. 16-1, p. 23. She sought an order "requiring the Respondents to cease interfering with Petitioner's right to PRIVATE visitation with Dorothy Marie Pellegrino [in Arizona] . . . ." Doc. 16-1, p. 24. She sought an order "prohibiting [Valerie and Tony] . . . from contact with Dorothy for the duration of the effectiveness of this order, or until Petitioner files a declaration stating that she has successfully visited Dorothy in private for at least three consecutive days." Doc. 16-1, p. 25. The plaintiffs claim in Count 1 of the Complaint that the defendants' petition for guardianship

was made for ulterior purposes and constitutes abuse of process. Doc. 1-2, p. 10.

The court concludes that filing this court action was an intentional act. It was expressly aimed at Valerie and Tony in the forum state, Arizona. It caused the alleged harm to Valerie and Tony in the forum state of Arizona and the defendants knew that this is where the harm would be suffered. The purposefully directed test is satisfied, and therefore the first prong of the minimum contacts test is satisfied. *Pebble Beach Co.,* 453 F.3d at 1156.

The second prong of the minimum contacts test is satisfied because "the claim arises out of or results from the defendant[s'] forum-related activities." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). That is, the claim arises out of the defendants' filing of the petition and associated motion. The court finds that this court proceeding fulfills the first two prongs of the minimum contacts test. *See Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) ("Generally, the commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements of the minimum contacts test.") (punctuation modified); *see, e.g.*, *Freestream Aircraft*, 905 F.3d at 603 (The first two prongs of the minimum contacts test were satisfied where the defendant's "allegedly defamatory statement was made in Nevada, and the cause of action arises from that statement.").

### The King County Action

Pam, represented by Don, also instituted a lawsuit in King County, Washington. Amended Complaint, Doc. 16-2, p. 2. She asserted that the writing dated January 27, 2021, in which Valerie and Tony "expressed no objections to Pam visiting Dot if Dot wanted to visit with her," was a contract that was breached by the plaintiffs. Doc. 16-2, p. 36; Doc. 1-2, p. 5; Doc. 9, p. 4. She sought an Ex Parte Temporary Restraining Order "forbidding [Tony and Valerie] from communicating with [Dot] for 28 days while [Pam and Don] make an emergency visit to Beehive to visit [Dot]." Doc. 16-2, pp. 12, 36-37. The plaintiffs claim in Count 1 and Count 2 of the Complaint that this petition was instituted for ulterior purposes and constitutes abuse of process and wrongful institution of civil proceedings. Doc. 1-2, pp. 10-11.

1    The court concludes that filing the petition was an intentional act. The petition sought
2    to induce and constrain specific actions by Tony and Valerie in Arizona. *See, e.g., Yahoo! Inc.*
3    *v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006) (French
4    defendants committed an intentional act expressly aimed at the forum state when they filed, in
5    a foreign court, a lawsuit in which they sought orders directing the plaintiff, Yahoo!, to perform
6    acts in the forum state, California.). The alleged harm[1] was "suffered and which the
7    defendant[s] [knew] [was] likely to be suffered in the forum state." *Pebble Beach Co. v. Caddy*,
8    453 F.3d 1151, 1156 (9th Cir. 2006); *see, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et*
9    *L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006) (Foreign lawsuit caused harm to California
10   company where the defendant might seek enforcement orders in the future that could "cast a
11   shadow on the legality of [the plaintiff's] currently policy."). The purposefully directed test is
12   satisfied, and therefore the first prong of the minimum contacts test is satisfied. *Pebble Beach*
13   *Co.,* 453 F.3d at 1156.

14   The second prong of the minimum contacts test is also satisfied because Count 1 and
15   Count 2 "arise[] out of or result[] from the defendant[s'] forum-related activities." *Pebble*
16   *Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). That is, the claims arise out of the
17   defendants' filings. The court finds that the filings fulfill the first two prongs of the minimum
18   contacts test. *See, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433
19   F.3d 1199, 1209 (9th Cir. 2006) (Suit seeking a declaratory judgment against orders issued by
20   foreign court arose out of the prosecution of that foreign action.).

22   <u>Minimum Contacts, Prong Three</u>
23   The plaintiffs having satisfied both of the first two prongs of the minimum contacts test,
24   "the burden then shifts to the defendant to 'present a compelling case' that the exercise of
25   jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

---

[1] This action was eventually dismissed for lack of personal jurisdiction. Doc. 16-2, p. 51; Doc. 22, p. 1, Exhibit B-3. The dismissal presumably limited the harm caused by filing the action, but it does not affect this court's analysis.

797, 802 (9th Cir. 2004). In their motion, however, the defendants limit their argument to the first two prongs of the minimum contacts test. Doc. 9; *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). They do not argue specifically that the exercise of jurisdiction would be unreasonable if the first two prongs were satisfied. Because they have the burden of proof on that prong and because they offer no argument on that issue, the court cannot find for the defendants on the third prong of the minimum contacts test. Moreover, the court finds that the defendants' conduct and connection with the forum state are such that they "should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980). The minimum contacts test for specific personal jurisdiction is satisfied. Personal jurisdiction is proper; the motion to dismiss should be denied.

The defendants direct the court to two court cases in support of their motion to dismiss: *Morrill v. Scott Financial Corporation*, 873 F.3d 1136 (9th Cir. 2017) and *Eastboro Foundation Charitable Trust v. Penzer*, 950 F.Supp.2d 648 (S.D.N.Y. 2013). The court finds these cases do not apply in the circumstances presented here.

The *Morrill* litigation arose out of a civil action previously filed in Nevada by a financial group, collectively referred to as the "Tharaldsons," against a group of developers, collectively referred to as the "Scott Parties." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1139-40 (9th Cir. 2017). "The Tharaldsons sought to be relieved of obligations associated with their previous guaranty of a $100 million construction loan made in connection with [a failed] condominium project." *Id*. K. Layne Morrill was the Arizona attorney who represented the Tharaldsons in the Nevada lawsuit.

Morrill alleged that the Scott Parties and their counsel, J. Randall Jones, "engaged in a campaign to harm [Morrill and his firm] in retaliation for their role as counsel to the Tharaldsons." *Id*. This campaign, he asserted, included (1) an effort to depose Morrill and his partner, (2) a defamation action filed in Nevada against Morrill and his firm for statements made to a Nevada mortgage lender, and (3) a grievance filed with the Nevada State Bar "alleging that Morrill acted unethically and unprofessionally." *Id*. at 1140-41.

The effort to depose Morrill and his partner turned out to be quite involved because "[a]s part of that process, the Scott Parties commenced companion civil proceedings in an Arizona Superior Court seeking to obtain a separate deposition subpoena for each witness." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1140 (9th Cir. 2017). "At that time, these civil proceedings were required by Arizona Rule of Civil Procedure 30(h) when an out-of-state party sought to depose a person who resided in Arizona." *Id*. Litigation ensued and eventually the Arizona Superior Court granted a motion to quash, but the issue was subsequently transferred to Nevada for *de novo* adjudication "by the Special Discovery Master in Nevada who was overseeing discovery disputed in the Tharaldson Litigation." *Id*. at 1140.

Based on this pattern of conduct, Morrill and his firm (collectively, "Morrill") filed suit in *Arizona* against the Scott Parties, their counsel, and his firm for abuse of process and wrongful institution of civil proceedings. *Id*. at 1139. Morrill argued that the Arizona court could assert personal jurisdiction over the out-of-state defendants because the defendants committed intentional acts purposefully directed at the forum state of Arizona such as (1) sending letters, emails, and pleadings to the plaintiffs in Arizona, (2) "filing civil actions in Arizona in order to have deposition subpoenas issued," (3) filing in Arizona Superior Court an opposition to Plaintiffs' motion to quash the subpoenas, (4) sending copies of the Arizona briefs to the Nevada Special Master, and (5) filing a defamation action in Nevada against the plaintiffs and serving process on the plaintiffs in Arizona. *Id*. at 1142-43. The *Morrill* court denied personal jurisdiction over the out-of-state defendants and explained as follows:

> The allegedly tortious conduct here involved very limited communications and proceedings in Arizona, all of which arose out of and were component parts of the litigation in Nevada. Any links to Arizona, which included Defendants' communications with Plaintiffs by telephone and email about the Tharaldson Litigation, occurred only because it happened to be where Plaintiffs resided. The primary effects of Defendants' actions, including the alleged harm, were tied directly to the litigation in Nevada.

\* \* \*

> Under the facts of the instant case . . . the driving force behind Defendants' actions—the ongoing litigation in Nevada—also provides the framework within which the actions occurred and the foreseeable harm would result. In other words, the allegedly tortious acts were not simply *motivated* by, or designed to achieve

- 11 -

> a benefit in, the Nevada litigation, they were component parts of that litigation. Indeed, the manner in which the Defendants allegedly conducted the litigation in Nevada, i.e., the Tharaldson Litigation, the defamation action and the Nevada State Bar proceeding, is the basis for Plaintiffs' claims.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-1145 (9th Cir. 2017) (emphasis in original). In other words, while the defendants committed certain acts within the forum state of Arizona they were more or less a sideshow when compared with the defendants' pattern of conduct directed at the plaintiffs' participation in the Nevada litigation. It was in Nevada, not Arizona, that the defendants hoped to reap the benefits of their allegedly wrongful filings. (And they were apparently successful because the Tharaldsons elected to retain new counsel shortly after the defendants filed their grievance against Morrill with the Nevada State Bar. *Id*. at 1141.)

In their pending motion, Pam and Don argue that *Morrill* "is very close factually, to the present case" because the *Morrill* court "held that filing out-of-state complaints and serving the plaintiffs in Arizona did not confer personal jurisdiction over the Nevada defendants in Arizona." Doc. 9, pp. 2-3. And here "a guardianship, or protective order, or order of specific performance was sought instead of a subpoena." Doc. 9, p. 3. The court does not agree.

The *Morrill* court found that filing the action in Arizona Superior Court was not an act purposefully directed at the forum state because that action was statutorily required "when an out-of-state party sought to depose a person who resided in Arizona." *Id*. at 1140. As such, it was a mere adjunct to the lawsuit in Nevada, which was the focus of the allegedly wrongful pattern of conduct alleged in the Complaint.

In this case, however, the lawsuits filed by the defendants were not a mere adjunct to a pre-existing action originating outside the forum state; they were the main event. Through these filings, Pat and Don sought to obtain legal rights in Arizona (guardianship of an Arizona resident), to constrain the actions of Arizona residents in Arizona, and to enforce a contract by holding Arizona residents to specific performance in Arizona. The defendants here committed intentional acts purposefully directed at the forum state of Arizona calculated to affect the legal rights of Arizona residents in Arizona. *Morrill* is distinguishable.

The defendants cite *Eastboro Foundation Charitable Trust v. Penzer*, 950 F.Supp.2d 648 (S.D.N.Y. 2013) in support of their argument that Don is not subject to general jurisdiction simply because he is an attorney licensed to practice law in Arizona. Doc. 9, p. 3. They assert that "Don does not seek Arizona cases and Don does not advertise in Arizona." *Id*.

The plaintiffs do not argue that Don is subject to general jurisdiction in Arizona. The court does not reach that issue.

In their reply, the defendants assert that "[a]n 'intentional act' for the purposes of establishing personal jurisdiction requires a tort," and "[n]o intentional act sounding in tort has been alleged on the face of Plaintiffs' complaint." Doc. 17, pp. 4-5; ¶¶ 14-16. The court does not agree. The Complaint alleges that the defendants filed actions that constitute Abuse of Process and Wrongful Institution of Civil Proceedings. Doc. 1-2, pp. 10-11. These are intentional acts sounding in tort. *See* Restatement (Second) of Torts, Chapter 30: Wrongful Use of Civil Proceedings, Chapter 21: Abuse of Process. Moreover, the Ninth Circuit does not require that the intentional act establishing personal jurisdiction be a tort. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (rejecting the defendants' argument that the "*Calder* [effects test] requires that the actions expressly aimed at and causing harm in California be tortious or otherwise wrongful.").

The defendants maintain that personal jurisdiction cannot be proper in Arizona because they did not commit a tort *in the forum state*. Doc. 17, p. 5, ¶ 19. The court does not agree. Personal jurisdiction may be based on intentional conduct committed in a foreign state provided it is "expressly aimed at the forum state." *See, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006). And the Apache County Superior Court action was filed in the forum state.

The defendants further argue that jurisdiction is improper because they did not purposefully direct their activities toward the forum state of Arizona. Citing *Walden v. Fiore,* 571 U.S. 277, 280, 134 S. Ct. 1115, 1119 (2014), they assert that they directed their activities

toward Dot, who happened to live in Arizona. They maintain that if Dot lived in Iowa, they would have directed their activities there. Doc. 17, p. 9, ¶ 28.

In *Walden*, the defendant police officer seized the plaintiffs' gambling winnings in the Atlanta airport that the plaintiffs alleged had been legitimately earned and was being transported to their home in Nevada. 571 U.S. at 280, 134 S. Ct. at 1119. The plaintiffs filed suit in Nevada against the officer arguing that his probable cause affidavit, filed in Georgia, was false and misleading in violation of their Fourth Amendment rights. *Id*. at 280-281, 1119-1120. The Supreme Court found that personal jurisdiction in Nevada was improper because "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the *random, fortuitous, or attenuated contacts* he makes by interacting with other persons affiliated with the State." *Id.* at 286, 1123 (emphasis added). This court finds *Walden* distinguishable.

In *Walden*, the Supreme Court found personal jurisdiction over the officer improper in Nevada because "Petitioner never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." 571 U.S. at 289, 134 S. Ct. at 1124. That Court explained that none of the "*defendant's* actions connected him to the *forum*." *Id*. (emphasis in original). This case is different. Here, the defendants traveled to Arizona but failed to have the peaceful visit with Dot that they intended. They subsequently filed legal actions for the purpose of facilitating another trip to Arizona, assuming guardianship over Dot (an Arizona resident), moving Dot from Eager, Arizona to Tucson, Arizona, and constraining the activities of the Arizona plaintiffs in Arizona. The defendants' contact with the forum are not "random, fortuitous, or attenuated." *See Walden* at 286, 1123.

IT IS ORDERED that the Motion to Dismiss for Lack of Personal Jurisdiction pursuant to F<small>ED</small>.R.C<small>IV</small>.P.12(b)(2), filed by the defendants on January 20, 2025, is DENIED. Doc. 9.

DATED this 1st day of May, 2025.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

_____
Honorable Michael A. Ambri
United States Magistrate Judge

21
22
23
24
25
26
27
28